IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | |
|---|---|
| MARGARET COURTNEY<br>18221 Hempstone Avenue<br>Poolesville, Maryland 20837<br>Montgomery County | *<br><br>*<br><br>* |
| And | *<br><br>* |
| SYDONNIE CAIN<br>9700 Cedarhollow Lane<br>Upper Marlboro, Maryland 20774<br>Prince George's County | *<br><br>*<br><br>* |
| And | * |
| SHIRLEY BOONE<br>23241 Dahlia Circle<br>California, Maryland 21619<br>St. Mary's County | *<br><br>*<br><br>* |
| Plaintiffs, | *<br><br>* |
| v. | *<br><br>* |
| CHESAPEAKE HOME<br>HEALTH CARE, INC.<br>Serve On:<br>Erica P. Crews-Paul<br>8300 Corporate Drive<br>Suite 120<br>Landover, MD 20785 | *<br><br>*<br><br>*<br><br>*<br><br>* |
| And | * |
| ERICA P. CREWS-PAUL<br>8300 Corporate Drive<br>Suite 120<br>Landover, MD 20785<br>Defendants. | *<br><br>* |

Civil Action No.: 20-CV-3289-PWG

* * * * * * * * * * * *

**COMPLAINT**

Plaintiffs, former employees of the Defendants Chesapeake Home Health Care Inc, headquartered in Prince Georges County, Maryland ("Chesapeake"), and Erica P. Crews-Paul, respectfully file this Complaint on behalf of themselves and similarly situated employees. Plaintiffs seek redress for Defendants' inaccurate, fraudulently filed W-2 tax forms concerning their wages under the 26 U.S.C. § 7434. Plaintiffs also claims under 29 U.S. C. § 1163 *et seq.* for violations of ERISA, and claims for unpaid wages under the Fair Labor Standards Act ("FLSA"), Maryland Wage and Hour Law ("MWHL"), and the Maryland Wage Payment and Collection Law ("MWPCL"). Class action status is sought under Count I for the claims under 26 U.S.C. § 7434, and in Count II for the ERISA claim.

## THE PARTIES

**PLAINTIFFS**

1. Plaintiff Margaret Courtney is an adult citizen of the State of Maryland.

2. Plaintiff Sydonnie Cain is an adult citizen of the State of Maryland.

3. Plaintiff Shirley Boone is an adult citizen of the State of Maryland.

**Plaintiff Margaret Courtney**

4. Plaintiff Courtney's job title was director of marketing for Defendants.

5. Plaintiff Courtney was employed by Defendants as Director of Marketing from May 18, 2019 through January 31, 2020.

6. From May 18, 2019, until January 31, 2020, Plaintiff Courtney was a salaried employee for Defendants, with an annual salary of $80,000.

7. Plaintiff Courtney was paid on a bi-weekly basis by Defendants, with paychecks issued on the 7th and 22nd of each month, while she was a salaried employee.

8. After January 31, 2020, Plaintiff Courtney and Defendants entered into an oral contract under the terms of which she continued to perform her job duties for Defendants as an independent contractor.

9. Plaintiff Courtney performed her job duties for Defendants as an independent contractor until February 28, 2020.

**Plaintiff Sydonnie Cain**

10. Plaintiff Cain's job title was Assistant Director of Nursing for Defendants.

11. Plaintiff Cain was employed by Defendants as Assistant Director of Nursing from October 7, 2019 until May 15, 2020.

12. Plaintiff Cain was a salaried employee for Defendants with an annual salary of $80,000.

13. Plaintiff Cain was paid on a bi-weekly basis by Defendants, with paychecks issued on the 7th and 22nd of each month, while she was a salaried employee.

**Plaintiff Shirley Boone**

14. Plaintiff Shirley Boone was employed by Defendants as an administrative assistant and later as office manager from March 23, 2015 through May 1, 2020.

15. Plaintiff Boone was paid as a salaried employee by Defendants with an annual salary of $35,000.

16. Although Plaintiff Boone was a salaried employee, her jobs duties did not require the exercise of independent discretion or judgment.

17. Plaintiff Boone did not supervise two or more employees during her employment with Defendants.

18. Plaintiff Boone could not hire or fire Defendants' employees during her employment with Defendants.

19. Plaintiff Boone could not discipline Defendants' employees during her employment with Defendants.

20. Plaintiff Boone was at all times during her employment a non-exempt employee within the meaning of the FLSA, and the Maryland Labor & Employment Code, and the implementing rules and regulations of the FLSA and the Maryland Labor & Employment Code.

**DEFENDANTS**

21. Defendant Chesapeake Home Health Care Inc. (hereinafter Chesapeake or Defendant Chesapeake) operates a for-profit, home health care company.

22. Defendant Chesapeake conducts business throughout the State of Maryland.

23. Defendant Chesapeake's annual gross volume of sales and/or business done exceeds $500,000.

24. Defendant Chesapeake engages in interstate commerce.

25. Defendant Chesapeake is a Maryland registered corporation.

26. Defendant Chesapeake is headquartered in Prince Georges County, Maryland.

27. Defendant Chesapeake decides company-wide policy at its Prince Georges County, Maryland, headquarters, and establishes policy from there.

28. Defendant Chesapeake was Plaintiffs' employer within the meaning of the term of the MWHL, Md. Ann. Code, Labor & Employment, §3-401(b), the MWPCL, Md. Ann. Code, Labor & Employment, §3-501, and the FLSA, 29 U.S.C. § 203(d).

29. Defendant Chesapeake is subject to the MWPCL, MWHL, and FLSA.

30. Defendant Chesapeake employed and paid the Plaintiffs as its employees.

31. Defendant Chesapeake is in sole possession of the documents necessary to state a precise claim for damages.

4

32. Defendant Erica Crews-Paul (Defendant Crews-Paul) is the founder, owner, resident agent, and CEO of Defendant Chesapeake.

33. Defendant Crews-Paul was Plaintiffs' employer because:

    a. Defendant Crews-Paul manages the day-to-day operations of Defendant Chesapeake.

    b. Defendant Crews-Paul developed and implemented the employment policies and procedures by which Defendant Chesapeake operates, including its wage payment policies and procedures.

    c. Defendant Crews-Paul set Plaintiffs' and similarly situated employees' manner and amount of pay.

    d. Defendant Crews-Paul had the ultimate control over Plaintiffs' and similarly situated employees' work schedules.

    e. Defendant Crews-Paul had the authority to and did hire and fire Defendants' employees, including Plaintiffs.

34. Defendant Crews-Paul, as the founder, owner, resident agent, and CEO of Defendant Chesapeake was directly involved in the payment of Plaintiffs' wages because:

    a. Defendant Crews-Paul developed and implemented Defendant Chesapeake's wage payment policies and procedures.

    b. Defendant Crews-Paul set Plaintiffs' manner and amount of pay.

    c. Defendant Crews-Paul had the ultimate control over Plaintiffs' and similarly situated employees' work schedules; which directly impacted their pay.

35. Defendants shared the control and supervision of the Plaintiffs.

36. Defendants shared the power to hire and/or fire the Plaintiffs.

5

37. The Defendants shared responsibility for functions governing Plaintiffs' employment, including but not limited to, controlling Plaintiffs' schedules, setting Plaintiffs' pay, directing Plaintiffs' work, disciplining Plaintiffs, and providing the materials Plaintiffs' needed to perform their work.

38. Defendants were Plaintiff's joint and co-employers within the meaning of the terms of the FLSA, 29 U.S.C. § 203(d), the MWHL, Md. Ann. Code, Labor & Employment, §3-401(b), and the MWPCL, Md. Ann. Code, Labor & Employment, §3-501.

39. Defendants are subject to the FLSA, MWHL, and the MWPCL for owed wages.

## FACTS CONCERNING DEFENDANTS' VIOLATIONS OF THE LAW

40. Defendants employed Plaintiffs Courtney, Cain, and Boone were salaried employees.

**Unpaid Bonuses – Plaintiffs Courtney and Boone**

41. During Plaintiff Courtney's and Boone's employment, Defendants held a contest in which qualifying employees, such as Plaintiffs Courtney and Boone, could receive a $1,000 bonus for bringing in new patients to Defendants' facilities.

42. Plaintiffs Courtney and Boone were eligible to participate in the Defendants' contest.

43. Plaintiffs Courtney and Boone performed all of the work necessary to and satisfied all of the requirements to receive the $1,000 bonus under the terms of Defendants' contest.

44. Defendants failed to pay Plaintiffs Courtney and Boone the $1,000 bonus even though they completed all the work necessary receive the bonus money in January 2020.

45. Defendants failed to pay $1,000 to Plaintiffs Courtney and Boone for the contest even though they satisfied all the conditions necessary to receive the $1,000 that had been previously promised to them.

46. Over two weeks have passed since the date Defendants were required to pay Plaintiffs

Courtney and Boone the $1,000 bonuses they earned.

47. There is no bona fide dispute as to the unpaid wages Defendants owe Plaintiffs Courtney and Boone for unpaid bonus wages.

48. Pursuant to the MWPCL, Md. Code Ann., Labor & Empl. § 3-505, Defendants were obligated to pay Plaintiffs Courtney and Boone all wages earned.

**Unpaid Overtime Wages – Plaintiff Boone**

49. Plaintiff Boone was a non-exempt employee for Defendants entitled to overtime wages.

50. Initially, Plaintiff Boone was hired as an hourly administrative assistant, a non-exempt position.

51. At the end of her employment, Plaintiff Boone was a salaried office manager earning $35,000 annually.

52. Although Plaintiff Boone was a salaried employee at the end of her employment, her jobs duties as an office manager did not require the exercise of independent discretion or judgment.

53. Plaintiff Boone did not supervise two or more employees during her employment with Defendants as an office manager.

54. Plaintiff Boone could not hire or fire Defendants' employees during her employment with Defendants an office manager.

55. Plaintiff Boone could not discipline Defendants' employees during her employment with Defendants an office manager.

56. During approximately six to eight pay periods during the last three years of Plaintiff Boone's employment, Plaintiff Boone worked in excess of 40 hours per work week performing her job duties for Defendants.

57. On those occasions when Plaintiff Boone worked in excess of 40 hours per work week

7

performing her job duties for Defendants, Defendants failed to pay Plaintiff Boone overtime wages at a rate of one and one-half times her regular rate of pay for all overtime hours worked.

58. When Plaintiff Boone worked overtime for Defendants, she was also required to perform additional extra duties, in addition to her regular job duties, such as running quarterly breakfasts for nurses, organizing nurse week celebrations, coordinating Thanksgiving and Christmas celebrations, running errands in the morning before work, staying after work and staying late for office functions.

59. As a non-exempt employee, Plaintiff Boone was entitled to overtime wages at a rate of one and one-half times her regular rate of pay for all overtime hours worked.

60. Defendants never paid Plaintiff Boone overtime wages at a rate of one and one-half times her regular rate of pay for all overtime hours worked in excess of 40 hours per workweek as required by the FLSA, 29 U.S.C. § 207 and the MWHL, Md. Ann. Code, Labor & Employment, § 3-415.

61. Over two weeks have elapsed from the date on which the Defendants were required pay Plaintiff Boone all owed wages as required by the MWPCL, Labor and Employment § 3-507.2(a).

62. Defendants' failure to pay Plaintiff Boone all wages owed was not done in good faith and was willful.

63. Defendants' failure to pay Plaintiff all wages owed was not the result of a bona fide dispute.

64. Upon information and belief, Defendants did not seek the advice and counsel of an attorney knowledgeable about the requirements of the FLSA, MWHL, or MWPCL prior to deciding not to pay Plaintiff Boone all owed wages for all hours worked, including overtime wages.

65. Defendants failed to pay Plaintiff Boone her overtime time wages for all overtime work that she performed, as required by MWPCL, Md. Ann. Code, Labor & Employment, §3-505.

66. From 2015 when Plaintiff Boone began employment with Defendants and continuing into May 2020, Defendants paid cash bonuses to all named Plaintiffs in this case and all other office staff employed at the company's headquarters in Prince Georges County, Maryland.

**Defendants' Failure to Pay Owed PTO - Plaintiffs Courtney, Cain, and Boone**

67. Under Defendants' employment policies, Plaintiffs were promised four weeks of vacation pay ("PTO") after they completed a probationary period when they were hired by Defendants.

68. Defendants did not have a written policy stating Plaintiffs and other employees were not entitled to receive payment for their unused accrued PTO at the end of their employment.

69. Plaintiffs, at the end of their employment, each had unused accrued PTO.

70. At the termination of Plaintiff Courtney's employment with Defendants she had 136 hours of unused PTO. Her annual salary of $80,000.00 comes to $38.46 per hour (80,000/2080 = 38.46), so 136 x $38.46 comes to $5,230.56, which is due and owed to her for accrued unused PTO.

71. At the termination of Plaintiff Cain's employment with Defendants, she had 73 hours of unused PTO. Her annual salary of $80,000.00 comes to $38.46 per hour (80,000/2080 = 38.46), so 73 x $38.46 comes to $2,807.58, which is due and owed to her for accrued unused PTO.

72. At the termination of Plaintiff Boone's employment with Defendants, she had 123 hours of unused PTO. Her annual salary of $35,000.00 comes to $16.83 per hour (35,000/2080 = $16.83), so 123 x $16.83 comes to $2,070.09 that is now due and owing to her for accrued unused PTO.

73. Accordingly, Plaintiffs were each entitled to receive payment for their four weeks of accrued unused PTO within two weeks of the end of their employment.

74. Defendants' never paid Plaintiffs their accrued, unused PTO, within two weeks of the termination of their employment, in violation of the MWPCL, Md. Ann. Code, Labor &

Employment, §3-505.

**Defendants' Willful Issuance of Fraudulent Tax Returns – Plaintiffs Courtney, Cain, and Boone**

75. From 2015 through 2019, Defendants paid their employees various cash bonuses.

76. Defendants did not include cash bonuses paid to its employees on any of its employees W-2s, including the named Plaintiffs' W-2s for any year.

77. Defendants willfully and intentionally did not report the income that Plaintiffs and similarly situated employees earned from cash bonuses on Plaintiffs' and similarly situated employees' W-2's.

78. Accordingly, all W-2's issued by Defendants to Plaintiffs and similarly situated employees during five consecutive years of employment with Defendants were fraudulent because they did not report all of the wages Plaintiffs and similarly situated employees earned from cash bonuses.

79. Defendants' willfully underreported Plaintiffs' and other employees' wages in order to reduce the Defendants' liability for employer tax contributions such as the Defendants' portion of FICA taxes.

80. Defendants failed to report these separate and distinct checks as wages to the IRS on W-2s for each Plaintiff.

81. Defendants, with knowledge, willfully falsified wage records for each Plaintiff in submission of W-2s to the IRS.

82. Defendant Crews-Paul, as owner and CEO of Defendant Chesapeake had control over the payment of Plaintiffs' and similarly situated employees' wages.

83. Defendant Crews-Paul, as owner and CEO of Defendant Chesapeake had control over the issuance of Defendants' employees' W-2s, including Plaintiffs.

84. Defendant Crews-Paul, as owner and CEO of Defendant Chesapeake, devised the scheme under which Defendants operated to reduce Defendants employer tax liability by not reporting Defendants' employees' cash bonuses, paid by Defendants, on the Plaintiffs' and similarly situated employees' W-2s.

85. The fraudulent W-2s were issued by Defendant Chesapeake, under the direction and control of Defendant Crews-Paul.

86. Both Defendants Chesapeake and Crews-Paul were responsible for the issuance of the fraudulent W-2s.

**Defendants' ERISA Violations – Plaintiffs Courtney and Cain**

87. Defendants offered a group health insurance plan that both Plaintiff Courtney and Cain signed up for shortly after they began employment as employees for Defendants.

88. Upon information and belief, Defendants had more than twenty (20) employees that were in the group health insurance plan throughout Plaintiff Courtney and Cain's employment

89. Defendants were the plan administrators and responsible for providing continuing health insurance to Plaintiffs Courtney and Cain assuming that they separated from employment.

90. Plaintiffs Courtney and Cain separated from employment in 2020 but Defendants failed to send a COBRA notice for continuing health insurance coverage within the required time frame.

91. Defendants have still failed to provide any COBRA continuing health insurance coverage even though more than 43 days have elapsed since both Plaintiffs Courtney and Cain were separated from employment.

92. Plaintiffs Courtney and Cain were "covered employee(s)" within the meaning of COBRA, at all relevant times to this lawsuit.

93. The Defendants' "group health plan" was a plan within the meaning of COBRA.

11

94. Plaintiff Cain's termination in May 2020 and her hours being reduced to zero is and was a "qualifying event" within the meaning of 29 U.S.C. §1163(2).

95. Plaintiff Courtney's termination in January 2020 and her hours being reduced to zero is and was a "qualifying event" within the meaning of 29 U.S.C. §1163(2).

96. Defendants were required to notify Plaintiffs Courtney and Cain of their right to elect to continue health insurance coverage for 29 months following their stopping work and their hours being reduced to zero and their terminations pursuant to 29 U.S.C. § 1162(2)(a)(i).

97. Defendants were required to notify Plaintiffs Courtney and Cain that they had sixty (60) days from the date of Plaintiffs' termination to elect COBRA continuation coverage, pursuant to 29 U.S.C. §1165(a)(1)(B).

98. Defendants were required to notify Plaintiffs Courtney and Cain of their right to elect continuation coverage under COBRA within fourteen (14) days of their termination in 2020 from Defendants pursuant to 29 U.S.C. §§ 1166.

99. Defendants failed to notify Plaintiffs Courtney and Cain of their right to elect COBRA continuation coverage in a timely manner after their termination.

100.   Defendants violated the notice requirements of COBRA.

101.   As a result of Defendants' violation of federal law, Plaintiffs Courtney and Cain were not allowed to continue health insurance coverage in a timely manner and suffered monetary damages.

**Defendants' Breach of Contract – Plaintiff Courtney**

102.   From May 18, 2019, until January 31, 2020, Plaintiff Courtney was a salaried employee for Defendants.

12

103.    After January 31, 2020, Plaintiff Courtney and Defendants entered into an oral contract under the terms of which she would continue to perform her job duties for Defendants as an independent contractor in exchange for compensation at the same rate, paid on the same bi-weekly basis, as when she was a salaried employee for Defendants.

104.    Plaintiff Courtney performed her job duties for Defendants, under the terms of their oral contract, as an independent contractor from February 1, 2020 until February 28, 2020.

105.    Plaintiff Courtney and Defendants had an enforceable oral contract under Maryland law.

106.    Defendants breached that contract by failing to pay Plaintiff Courtney her owed wages under the contract at the same rate as when she was employed as a salaried employee for Defendants.

107.    Defendants breached the contract by only paying Plaintiff Courtney $2,000 for the work she performed for Defendants in accordance with her obligations under the contract from February 1, 2020 until February 28, 2020.

108.    Defendants' breach of their contract with Plaintiff Courtney has caused her damages in the form of lost wages.

**JURISDICTION AND VENUE**

109.    The jurisdiction of this Court is invoked due to the asserted violation of a federal statute and pursuant to of 28 U.S.C. § 1331.

110.    Venue is appropriate in this jurisdiction because Defendant Chesapeake is a Maryland corporation based in this District.

111.    Jurisdiction and venue is appropriate in this District because Defendants' illegal conduct was decided within and originated from Defendant Chesapeake in this District.

112.    Defendants' policy established in this District affected employees working at various

13

locations in Maryland.

Defendant Crews Paul's business office is in this District.

## VIOLATIONS OF LAW

**COUNT I -   MARYLAND WAGE PAYMENT & COLLECTION LAW, FAILURE TO PAY EARNED BONUSES**

113.    All allegations of this Complaint are incorporated fully in this Count.

114.    This Count applies to Plaintiffs Boone and Courtney, who are entitled to be compensated for all earned wages under the Maryland Wage Payment and Collection Law, Labor and Employment § 3-505.

115.    Defendants violated the MWPCL by not paying Plaintiffs Boone and Courtney the $1,000 bonuses they earned by completing the requirements of Defendants' contest in approximately January 2020.

116.    Plaintiffs Boone and Courtney have made demands for the owed bonus wages.

117.    Defendant refused and still refuses to pay the wages owing to Plaintiffs Boone and Courtney.

118.    Over two weeks have passed since Defendants were required to pay Plaintiffs all bonus wages owed.

119.    There is no bona fide dispute as to the wages and benefits owed or deductions made by Defendant.

120.    Relief requested - Pursuant to the Maryland Wage Payment and Collection Law, Md. Ann. Code, Labor & Employment § 3-507, Plaintiffs Boone and Courtney request that: (a) the Court award their wages owed and restore all wages due and owing; (b) treble damages be assessed against the Defendants; (c) Plaintiffs be awarded pre- and post-judgment interest; (d) Plaintiffs be awarded their costs and attorney's fees.

14

## COUNT II – THE FAIR LABOR STANDARDS ACT, FAILURE TO PAY OVERTIME WAGES

121.   All allegations of this Complaint are incorporated fully in this Count.

122.   This Count applies to Plaintiff Boone who is entitled to payment for unpaid overtime pay under the Fair Labor Standards Act, 29 U.S.C. § 207.

123.   Defendants violated the provision of the Fair Labor Standards Act by failing and refusing in a willful and intentional manner to pay Plaintiff Boone all overtime wages due to her under the FLSA and its implementing regulations.

124.   There is no bona fide dispute as to the wages owed or sought.

125.   Defendants' failure to pay Plaintiff Boone her owed overtime wages was not done in good faith and was willful.

126.   Plaintiff Boone was a non-exempt employee based on the nature of her pay and her job duties.

Relief requested – Plaintiff Boone request that: (a) Defendants be ordered to pay Plaintiff Boone for all overtime hours worked; (b) liquidated damages be assessed against the Defendants; (c) Plaintiff Boone be awarded pre- and post-judgment interest; (d) and Plaintiff Boone be awarded her attorney fees and costs.

## COUNT III – MARYLAND WAGE AND HOUR LAW, FAILURE TO PAY OVERTIME WAGES

127.   All allegations of this Complaint are incorporated fully in this Count.

128.   This Count applies to Plaintiff Boone, who is entitled to payment for unpaid overtime pay under the Fair Labor Standards Act, 29 U.S.C. § 207, Maryland Wage and Hour Law, Md. Ann. Code, Labor & Employment, § 3-415 by not paying Plaintiff Boone the required overtime wages.

129.   Defendant's violations of the MWHL were willful violations of the Act.

15

130.    There is no bona fide dispute that the Plaintiff Boone is owed the unpaid wages sought.

131.    Relief requested – Plaintiffs request that: (a) Defendant be ordered to pay Plaintiff Boone

for all overtime hours worked ; (b) liquidated damages be assessed against the Defendant;

(c) Plaintiffs be awarded pre- and post-judgment interest; (d) Plaintiffs be awarded their

attorney fees and costs; and (e) the Court grant class action status on this count.

## COUNT IV – MARYLAND WAGE PAYMENT AND COLLECTION LAW, FAILURE TO PAY OVERTIME WAGES

132.    All allegations of this Complaint are incorporated fully in this Count.

133.    This Count applies to Plaintiff Boone, who is entitled to be compensated for unpaid,

earned, overtime wages, under the Maryland Wage Payment and Collection Law, Labor and

Employment § 3-505.

134.    Defendants violated the MWPCL by not paying Plaintiff Courtney Boone her earned,

owed overtime wages within two weeks of the termination of her employment.

135.    Defendant's actions in failing to pay Plaintiff Boone  were willful violations of the

Maryland Wage Payment and Collection Law.

136.    Plaintiffs have made demands for wages owed.

137.    Defendant refused and still refuses to pay the wages owing to Plaintiff Boone.

138.    Over two weeks have passed since Defendants were required to pay Plaintiff Boone all

wages owed.

139.    There is no bona fide dispute as to the unpaid overtime wages owed to Plaintiff Boone.

140.    Relief requested - Pursuant to the Maryland Wage Payment and Collection Law, Md. Ann.

Code, Labor & Employment § 3-507, Plaintiffs request that: (a) the Court award their wages

owed and restore all wages due and owing; (b) treble damages be assessed against the

Defendants; (c) Plaintiffs be awarded pre- and post-judgment interest; and (d) Plaintiffs be awarded their costs and attorney's fees.

## COUNT V – MARYLAND WAGE PAYMENT AND COLLECTION LAW, FAILURE TO PAY ACCRUED LEAVE

141.    All allegations of this Complaint are incorporated fully in this Count.

142.    This Count applies to Plaintiffs Courtney, Boone, and Cain, who are entitled to be compensated for accrued unused leave, under the Maryland Wage Payment and Collection Law, Labor and Employment § 3-505.

143.    Defendants violated the MWPCL by not paying Plaintiffs their unused accrued leave within two weeks of the termination of her employment.

144.    Defendants did not have a written policy stating that Defendants' employees, such as Plaintiffs, were not entitled to payment for accrued leave at termination.

145.    Defendant's actions in failing to pay Plaintiffs their accrued leave were willful violations of the MWPCL.

146.    Plaintiffs have made demands for the accrued leave owed.

147.    Defendants refused and still refuse to pay the wages owing to Plaintiffs.

148.    There is no bona fide dispute as to the unpaid accrued leave owed to Plaintiffs.

149.    Relief requested - Pursuant to the Maryland Wage Payment and Collection Law, Md. Ann. Code, Labor & Employment § 3-507, Plaintiffs request that: (a) the Court award their wages owed, including unpaid accrued leave, and restore all wages due and owing; (b) treble damages be assessed against the Defendants; (c) Plaintiffs be awarded pre- and post-judgment interest; and (d) Plaintiffs be awarded their costs and attorney's fees.

## COUNT VI – 26 U.S.C. § 7434, WILLFUL FRAUDULENT TAX FILINGS

150.    All allegations of the Complaint are expressly incorporated herein.

151.   This Count applies to Plaintiffs Courtney, Boone, and Cain.

152.   Defendants were responsible to submit accurate wage statements for each Plaintiff to the IRS.

153.   Defendant willfully and knowingly filed false W-2 forms that misstated wages earned with one or more of the following inaccuracies:

    A) Defendant paid cash to Plaintiffs without tax withholdings and did not report this income to the IRS on W-2 forms;

    B) Plaintiffs lost Social Security benefits immediately and in the future because Defendants were legally required to deduct 6.25% on all earned income including the bonuses that they paid to Plaintiffs.

    C) Defendants have been engaged in this process for numerous years including both before and after the time that Plaintiffs were employed by Defendants.

154.   In summary, Defendants knowingly filed false W-2s with the IRS concerning Plaintiffs' employment wages and misstated the amount paid in fact, and the amount owed in fact, to the IRS, but underreporting the wages paid to Plaintiffs and other employees on their W-2s.

155.   Defendant Crews-Paul knowingly caused the filing of false W-2s through the creation and/or approval of Defendant Chesapeake's wage payment and tax policies.

156.   Defendant Crews-Paul  knowingly failed to prevent and/or correct false W-2s from being filed with the IRS despite her duty to do so as CEO & Owner of Spartan Electric.

157.   Plaintiffs sue for redress under 26 U.S.C. § 7434.

158.   Relief requested - Plaintiffs pursuant to subsection (b) of 26 U.S.C. § 7434 request that: (a) Defendants are ordered to pay Plaintiffs' actual damages; (b) attorney's fees and costs for bringing this legal action; (c) and statutory penalty of $5,000.

18

## CLASS ACTION UNDER COUNT VI
### WILLFUL FRAUDULENT TAX FILINGS BY DEFENDANTS CHESAPEAKE AND CREWS-PAUL

159. All allegations of the Complaint are expressly incorporated herein.

160. Plaintiffs seek class action status for similarly situated workers with these operative facts:

A) worked for Defendant at anytime during 2015 through the present date;

B) as office employees;

C) who worked in Maryland; and

D) were subject to knowingly false wage statements by Defendants through filings of W-2s that underreported their earned wages by not reporting cash bonuses.

161. The class is so numerous that joinder of all members is impracticable because the number of workers exceeds 15.

162. The class is geographically diverse across Maryland and makes joinder impracticable.

163. Class action is a superior method because these workers are numerous, unknown but easily identifiable through Defendant's records.

164. Questions of law or fact common to the class, including the core claim that

A) each was paid cash bonuses without tax withholdings and those bonuses were never reported to the IRS via a W-2,

B) Each lost Social Security contributions that the Defendants were legally required to pay immediately and also caused the loss of future Social Security benefits.

165. These core common facts are operative facts for determining claims and defenses, while differences in pay rates and job titles are details that do not change it.

166. These core common facts predominate any inconsequential differences such as slightly different pay rates or marginally different job titles.

167. Claims and defenses of the representative parties are typical of the claims or defenses of

the class because Defendants subject the entire workforce to the same illegal pay policies and, upon information and belief, continue to do so through the present date.

168.   The representative parties will fairly and adequately protect the interests of the class because the parties are similarly situated to the class and have identical claims and burdens of proof as the class.  Plaintiffs' litigation will further class interests.

169.   A class action furthers judicial economy because Plaintiffs' claims and class claims require the same proof and elicit the same defenses.

170.   A class action reduces the risk of an unjust result to nearly identical claims due to the vagaries of litigation.

171.   A class action permits a unified discovery and reduces burdensome duplicate discovery and discovery disputes.

172.   The class action applies to Count VI of Plaintiffs' Complaint.

173.   This class action incorporates all remedies sought under Count VI and any other remedy the Court deems just.

**COUNT VII - COBRA VIOLATION, FAILURE TO PROVIDE TIMELY NOTICE UNDER COBRA**

174.   All allegations of the Complaint are expressly incorporated herein.

175.    This Count applies to Plaintiffs Courtney and Cain.

176.   Plaintiff Cain is and was a "covered employee" within the meaning of COBRA, at all relevant times to this lawsuit.

177.   Plaintiff Courtney is and was a "covered employee" within the meaning of COBRA, at all relevant times to this lawsuit.

178.   The Defendants' "group health plan" was a plan within the meaning of COBRA.

179.   Plaintiff Cain's termination in May 2020 and her hours being reduced to zero is and was a "qualifying event" within the meaning of 29 U.S.C. §1163(2).

180.   Plaintiff Courtney's termination in January 2020 and her hours being reduced to zero is and was a "qualifying event" within the meaning of 29 U.S.C. §1163(2).

181.   Defendants were required to notify Plaintiffs their right to elect to continue health insurance coverage for 29 months following Plaintiff Cain's and Courtney's stopping work and their hours being reduced to zero and their terminations pursuant to 29 U.S.C. §1162(2)(a)(i).

182.   Defendants were required to notify Plaintiffs that they had sixty (60) days from the date of Plaintiffs' termination to elect COBRA continuation coverage, pursuant to 29 U.S.C. §1165(a)(1)(B).

183.   Defendants were required to notify Plaintiffs of their right to elect continuation coverage under COBRA within fourteen (14) days of their termination in 2020 from Defendants pursuant to 29 U.S.C. §§ 1166.

184.   Defendants failed to notify Plaintiffs of their right to elect COBRA continuation coverage in a timely manner after their termination.

185.   Defendants violated the notice requirements of COBRA.

186.   As a result of Defendants' violation of federal law, Plaintiffs Courtney and Cain were not allowed to continue health insurance coverage in a timely manner and suffered monetary damages.

187.   Relief Requested: Plaintiffs respectfully requests that: (a) judgment be entered in their favor; (b) Plaintiffs Courtney and Cain be awarded the full statutory penalty for each day Defendants violated COBRA; (c) Defendants be required to pay for and reimburse Plaintiffs and others for all damages and losses sustained by Plaintiffs; (d) Plaintiffs be provided all other

relief that may be necessary to make Plaintiffs whole for the wrongs committed against them by Defendants; (e) pre- and post-judgment interest be awarded; and (f) attorney fees and costs be awarded to Plaintiffs.

## COUNT VIII - BREACH OF CONTRACT

188.    Plaintiff Courtney moves to assert this Court's pendent jurisdiction pursuant to 28 U.S.C. § 1367.

189.    All allegations of the Complaint are expressly incorporated herein.

190.    This Count applies to Plaintiff Courtney.

191.    In exchange for the offer to pay Plaintiff Courtney's wages in accordance with Defendants in consideration in the form of the benefit of Plaintiffs' employment to work as an independent contractor, Plaintiff Courtney continued to work as director of marketing in February 2020 at the same rate of pay that she previously received as Director of Marketing.

192.    The agreement between Plaintiff Courtney and Defendant created a contractual obligation under which Defendants were required to pay Plaintiff Courtney as director of marketing at the same rate as when she was employed by Defendants.

193.    Defendants breached their contractual obligation by not paying Plaintiff Courtney by not paying her at the same rate that she was previously paid as Director of Marketing.

194.    Defendants breach of their contractual obligation to Plaintiff Courtney caused Plaintiff Courtney harm because Plaintiff was not paid for her work in February 2020.

195.    Relief requested - Plaintiffs request that Defendants be ordered to pay Plaintiff Courtney (a) all owed wages resulting from Defendants' breach of their obligations under their contract with Plaintiff Courtney, including any federal and state taxes that should have been paid by Defendants but for their breach, (b) any other remedy the Court deems appropriate.

Respectfully submitted,

Richard Neuworth, Bar #01052
Lebau & Neuworth, LLC
606 Baltimore Avenue – Suite 201
Baltimore, Maryland 21204
tel. 443.273.1202
fax. 410.296.8660
rn@joblaws.net

Devan M. Wang #30211
Lebau & Neuworth, LLC
606 Baltimore Avenue – Suite 201
Baltimore, Maryland 21204
tel. 443.273.1207
fax. 410.296.8660
dw@joblaws.net

*Attorneys for the Plaintiffs*

## REQUEST FOR JURY TRIAL

Plaintiffs requests that a jury of their peers hear and decide the claims asserted in this Complaint.

Devan M. Wang #30211